NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5055-15T1

RONALD B. BRUDER and
BROOKHILL CAPITAL RESOURCES,
INC.,

 Plaintiffs-Appellants,

v.

DAVID H. HILLMAN, SMC-VIENNA
PARK G.P., INC., VIENNA PARK,
L.L.C., SOUTHERN MANAGEMENT
CORPORATION,

 Defendants-Respondents,

and

THE GALLOWS CORPORATION,

 Defendant.
___________________________________

 Argued June 6, 2017 – Decided June 27, 2017

 Before Judges Yannotti, Fasciale and Gilson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Passaic County, Docket No.
 C-55-13.

 Elisabeth S. Theodore (Arnold & Porter Kaye
 Scholer, L.L.P.) of the Maryland and District
 of Columbia bars, admitted pro hac vice,
 argued the cause for appellants (Sandelands
 Eyet, L.L.P., and Ms. Theodore, attorneys;
 William C. Sandelands and Kathleen Cavanaugh,
 of counsel and on the briefs; Ms. Theodore and
 David Bergman (Arnold & Porter Kaye Scholer,
 L.L.P.) of the District of Columbia bar,
 admitted pro hac vice, on the briefs).

 Alexander G. Benisatto argued the cause for
 respondents (Shapiro, Croland, Reiser, Apfel
 & Di Iorio, L.L.P., attorneys; Mr. Benisatto,
 on the brief).

PER CURIAM

 Ronald B. Bruder (Bruder) and Brookhill Capital Resources,

Inc. (Brookhill) (plaintiffs) appeal from a June 10, 2016 order

granting summary judgment to David H. Hillman (Hillman), SMC-

Vienna Park G.P., Inc. (SMC), Vienna Park, L.L.C. (VPLLC) and

Southern Management Corporation (Southern) (defendants). That

order dismissed the complaint with prejudice. Plaintiffs also

appeal from a June 10, 2016 order denying their motion for partial

summary judgment.

 We affirm the order denying plaintiffs' motion for partial

summary judgment. We affirm the order granting summary judgment

to defendants as to Count One of the complaint. We reverse,

remand, and direct the judge to conduct further proceedings as to

Counts Two and Three of plaintiffs' complaint, requesting access

to books and records and an accounting.

 In 1984, plaintiffs formed a New Jersey limited partnership,

Vienna Park, L.P. (VP). Plaintiffs, who are sophisticated real

 2 A-5055-15T1
estate investors, served as general partners in VP. VP's express

purpose was to own and operate apartment buildings, specifically

a 300-unit complex in Virginia (the property). The property was

mismanaged and VP filed for bankruptcy.

 In 1992, the bankruptcy case settled. As part of that

settlement, VP negotiated an agreement with Hillman to take control

of VP, invest capital into VP, restructure VP's secured debt, and

to provide capital for continued debt service. Pursuant to the

bankruptcy court's order, Hillman purchased secured notes and

deeds of trust on the Property through the bankruptcy case for

$11,850,000.

 In 1993, VP emerged from bankruptcy under an amended

partnership agreement (the Agreement) with Hillman. The Agreement

converted plaintiffs' general partnership interests into limited

partnership interests, and substituted Hillman or "any corporation

or partnership owned or controlled by [Hillman]" as the general

partner. VP remained a New Jersey limited partnership, and Hillman

substituted SMC, a company he owned, as the general partner, and

designated Southern, another Hillman-owned entity, as the manager

of VP.

 In 2007, Hillman, through Southern and SMC, directed that VP

be converted into VPLLC as part of an overall strategy to refinance

loans. Hillman undertook the conversion to satisfy certain

 3 A-5055-15T1
requirements imposed by the lender, Freddie Mac, and to obtain

refinancing. Hillman executed a new operating agreement (the OA)

for VPLLC, transferring management to another of Hillman's

entities, The Gallows Corporation (Gallows).1 The OA stated that

the general and limited partners of VP "agreed to enter into this

[OA] to regulate the affairs of [VPLLC], the conduct of its

business, and the relations of its [m]embers."

 Plaintiffs alleged that they did not learn of the conversion

until 2012, and promptly requested to review certain records and

books, which Hillman denied. In 2013, plaintiffs filed this

complaint to unwind the conversion and review the books and records

of VPLLC. The complaint contains three counts requesting:

declaratory judgment that defendant dissolved the partnership

unlawfully and in violation of the partnership agreement, the

dissolution of VP is void, and the partnership agreement remained

valid and effective (Count One); access to books and records (Count

Two); and seeking an accounting of all disbursements and

investments of VP and VPLLC (Count Three).

 Plaintiffs maintained that the conversion was not only

illegal because they were uninformed, but that the OA significantly

1
 We previously affirmed an order dismissing the complaint
against Gallows for lack of personal jurisdiction. Bruder v.
Hillman, No. A-3112-13 (App. Div. June 12, 2015).

 4 A-5055-15T1
altered their rights including exculpating VPLLC's manager from

liability, creating new membership classes, and increasing fees

paid to the management company. They alleged that the conversion

amounted to an unlawful dissolution of VP.

 The parties cross-moved for summary judgment. The judge

granted defendants' motion as to Count One of the complaint

concluding that Hillman properly converted VP to VPLLC, plaintiffs

received notice of the conversion, and the statute of limitations

and doctrine of laches barred the complaint. The judge did not

address Counts Two and Three of the complaint in which plaintiffs

requested various books, records, and an accounting of all

disbursements and investments of VP and VPLLC. The judge denied

plaintiffs' cross-motion for summary judgment finding that they

did not object to the conversion.

 On appeal, plaintiffs argue that defendants dissolved the

partnership, rather than properly converting VP into VPLLC; laches

does not bar the complaint; and outstanding discovery precluded

the issuance of summary judgment to defendants.

 When reviewing an order granting summary judgment, we apply

"the same standard governing the trial court." Oyola v. Liu, 431

N.J. Super. 493, 497 (App. Div.), certif. denied, 216 N.J. 86

(2013). We owe no deference to the motion judge's conclusions on

 5 A-5055-15T1
issues of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,

140 N.J. 366, 378 (1995).

 We agree with the judge that the doctrine of laches bars

plaintiffs' complaint. "Laches is an equitable doctrine,

operating as an affirmative defense that precludes relief when

there is an 'unexplainable and inexcusable delay' in exercising a

right, which results in prejudice to another party." Fox v.

Millman, 210 N.J. 401, 417 (2012) (quoting County of Morris v.

Fauver, 153 N.J. 80, 105 (1998)). Laches is an equitable remedy

that our Supreme Court has found to be "an equitable defense that

may be interposed in the absence of the statute of limitations."

Id. at 418 (quoting Borough of Princeton v. Bd. of Chosen

Freeholders, 169 N.J. 135, 157 (2001)).

 The Court has explained, laches is "invoked to deny a party

enforcement of a known right when the party engages in an

inexcusable and unexplained delay in exercising that right to the

prejudice of the other party." Ibid. (quoting Knorr v. Smeal, 178

N.J. 169, 180-81 (2003)). "Laches may only be enforced when the

delaying party had sufficient opportunity to assert the right in

the proper forum and the prejudiced party acted in good faith

believing that the right had been abandoned." Knorr, supra, 178

N.J. at 181. "Our courts have long recognized that laches is not

governed by fixed time limits, but instead relies on analysis of

 6 A-5055-15T1
time constraints that 'are characteristically flexible[.]'" Fox,

supra, 210 N.J. at 418 (citation omitted) (quoting Lavin v. Bd.

of Educ., 90 N.J. 145, 151 (1982)). Whether laches applies

"depends upon the facts of the particular case and is a matter

within the sound discretion of the trial court." Mancini v.

Township of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v.

Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir.), cert. denied, 488

U.S. 908, 109 S. Ct. 259, 102 L. Ed. 2d 248 (1988)).

 In determining whether to apply laches, the court should

consider the length of the delay, the reasons for the delay, and

any changing circumstances of the parties during the delay. County

of Morris, supra, 153 N.J. at 105. As to the delay, the court

should look to an analogous statute of limitations, and laches

applies where "a claim derived from a statutory right had been

lost through failure to make a timely demand therefor." Fox,

supra, 210 N.J. at 420 (citing Lavin, supra, 90 N.J. at 152).

 In concluding that the doctrine of laches barred plaintiffs'

complaint, the judge followed these well-settled principles. The

judge found the undisputed motion record demonstrated that

 (1) [p]laintiff[s] ha[ve] not paid significant
 attention to [VP or VPLLC] since 2003; (2)
 [they] received K-1's since 2008[,] and
 whether they were simply received and passed
 along to [plaintiffs'] accountant or reviewed
 by the [p]laintiffs and their accountants, the
 [K-1's] were reflected on their signed tax

 7 A-5055-15T1
 returns; (3) [p]laintiff[s] received
 distributions [from VPLLC]; and (4)
 [p]laintiff[s] had full access to the
 electronic portal for any and all information
 so that they would become aware of any and all
 activities of the entity. It was not
 [d]efendant Hillman's responsibility or duty
 to "spoon-feed" a sophisticated, passive
 investor. Plaintiffs had significant
 responsibility to oversee their own investment
 and be aware of the actions that were being
 taken.

It is undisputed that the K-1's as of 2008 had the name VPLLC on

them, and plaintiffs filed the K-1's with their tax returns. The

judge also noted that had plaintiffs accessed the portal, they

would have learned of the conversion and all relevant documentation

associated with the Freddie Mac refinance.

 Moreover, plaintiffs could have learned of the conversion if

they had read any of the documents provided to them by defendants.

For example, on December 7, 2006, Southern mailed Hillman's

conversion notice to all the partners that owned multi-family

properties managed by Southern. The notice advised plaintiffs

that Southern intended to convert the partnerships into limited

liability companies, and stated:

 Under the terms of the existing partnership
 agreements, I am fully authorized on behalf
 of the partnership and all individual partners
 to undertake all action deemed necessary for
 the benefit of the entities (and partners).
 Provided there are no written objections to
 the conversion of the existing partnership to
 Limited Liability Company, I will undertake

 8 A-5055-15T1
 to accomplish the conversion prior to February
 2007.

Southern attached a list of multiple properties if a partner was

invested in more than one property. Plaintiffs invested in only

one property, and therefore Southern did not attach that list to

their notice. The judge properly found that a presumption of

mailing and receipt existed, and plaintiffs were deemed to have

received this notice.

 Now, over six years after the fact, plaintiffs have shown

considerable delay in filing their claim, and therefore the record

shows inexcusable and unexplainable delay. The record shows that

plaintiffs had sufficient knowledge of their rights, as

established by the presumption of mailing and other documents

plaintiffs received concerning the conversion. Therefore,

plaintiffs, who are sophisticated investors, had sufficient

opportunity to assert their rights.

 Timeliness aside, plaintiffs' inexcusable delay in objecting

to the conversion has prejudiced defendants. Prejudice would

result from complications in refinancing and by witness memories

fading. Since the 2007 Freddie Mac refinancing, VPLLC has

refinanced twice, and the terms of its most current loan could

imperil the loan if we reverse. The loan terms state that VPLLC

"will not take any action . . . to change its legal structure[.]"

 9 A-5055-15T1
The loan further notes that failure to comply with this requirement

will constitute an event of default for VPLLC. According to

defendants, a default on the loan "could have [a] catastrophic

impact across the entire loan portfolio[.]" The passage of six

years since the conversion presents significant practical problems

as "documents may no longer be available" and parties' memories

may have faded.

 We therefore conclude that the judge did not err by relying

on the doctrine of laches to grant summary judgment to defendants

on Count One. Accordingly, we need not reach the question of

whether the statute of limitations barred the complaint or if the

purported dissolution of the partnership occurred or was unlawful.

 We remand for the court to consider Counts Two and Three

because the judge did not address these arguments. The court's

ruling on laches pertained to the challenge to the conversion. On

remand, the trial court should address the claims in Counts Two

and Three.

 We conclude that plaintiffs' remaining arguments are without

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(1)(E).

 Affirmed in part, and reversed and remanded in part. We do

not retain jurisdiction.

 10 A-5055-15T1