836 A.2d 794

ELEANOR KNORR AND HAROLD KNORR, HER HUSBAND, PLAINTIFFS-APPELLANTS, v. BRIAN C. SMEAL, M.D. AND SOUTH JERSEY HOSPITAL SYSTEMS, ELMER DIVISION, DE-FENDANTS-RESPONDENTS, AND CURTIS L. LOCKWOOD, JOHN DOES 1 THROUGH 7 AND JOHN DOE, INC. 1 THROUGH 7 JOINTLY SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued September 22, 2003—Decided November 24, 2003.

*Paul R. Melletz,* argued the cause for appellants.

*Michael E. McGann,* argued the cause for respondent Brian C. Smeal, M.D., (*Amdur, Maggs & McGann,* attorneys).

*Mary Grace Callahan,* submitted a letter in lieu of brief on behalf of respondent South Jersey Hospital Systems, Elmer Division (*Grossman, Kruttschnitt, Heavey & Jacob,* attorneys).

Justice ALBIN delivered the opinion of the Court.

On repeated occasions, we have addressed the obligation of plaintiffs who file malpractice actions to conform to the procedural requirements of the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29. In such cases, within 120 days of receipt of the answer, a plaintiff must serve on defendant an affidavit from an appropriate professional attesting that the claim is meritorious. A plaintiff's failure to file a timely affidavit will result in dismissal of the claim, absent a justifiable excuse. *N.J.S.A.* 2A:53A–27; *Burns v. Belafsky,* 166 *N.J.* 466, 470–71, 766 *A.*2d 1095, 1097–98 (2001). Defendants must act timely too; they cannot sleep on their rights. In the companion case of *Ferreira v. Rancocas Orthopedic Assocs.,* 178 *N.J.* 144, 836 *A.*2d 779 (2003), decided today, we held that a defendant who filed a motion to dismiss *after* receipt of an untimely affidavit of merit forfeited his right to relief. In that case, we concluded that the equities required defendant to file his motion before he possessed the disputed affidavit. In this case, defendant let pass the deadline for receipt of the affidavit without

filing a dismissal motion. Instead, defendant engaged in the exchange of interrogatories, deposed plaintiffs and submitted to a deposition, obtained plaintiff's expert report, and had plaintiff physically examined. Fourteen months after the deadline had passed and after the merits of plaintiffs' claims had been established, defendant filed his motion to dismiss because of the missing affidavit. We now must determine whether the remedies of waiver, equitable estoppel, and laches should bar defendant's right to bring a dismissal motion so late in the process.

I.

In June 1997, following a fall, Eleanor Knorr, seventy-one years old, suffered persistent swelling of the lower right side of her body. Ms. Knorr consulted with defendant Brian C. Smeal, M.D., who, after conducting preliminary tests, admitted her to South Jersey Hospital System, Elmer Division.

On July 1, 1997, defendant performed a surgical exploration of Ms. Knorr's right groin for biopsy of enlarged groin nodes. On July 7, defendant and Curtis L. Lockwood, D.O., conducted further exploratory surgery during which they repaired an injury to the small bowel by performing a bowel resection. On July 14, defendant, while performing an emergency surgical procedure on Ms. Knorr, discovered among other things that she had developed multiple intra-abdominal abscesses in the area of the small bowel resection. Thereafter, Ms. Knorr spent nineteen days in the hospital's intensive care unit before her transfer to a nursing care facility. On September 17, 1997, Ms. Knorr was admitted to Underwood Hospital suffering from dehydration, sepsis, acute renal failure and short-gut syndrome. She was discharged from the hospital less than a month later, but was readmitted eight more times between October 1997 and April 1999. In July 1999, Ms. Knorr underwent a final surgical bowel resection procedure.

On July 1, 1999, Ms. Knorr and her husband (per quod) filed a medical malpractice action in which they alleged that Dr. Smeal and Dr. Lockwood negligently performed the first two surgeries.

Plaintiffs named Dr. Smeal, Dr. Lockwood and South Jersey Hospital System, Elmer Division, as defendants in the action. Defendants filed answers in which each demanded service of an affidavit of merit pursuant to *N.J.S.A.* 2A:53A–26.

On December 15, 1999, just over 120 days after filing his answer, Dr. Lockwood moved to dismiss the complaint because of plaintiffs' failure to serve him with an affidavit of merit. The court granted Dr. Lockwood's motion. Less than two weeks later, the hospital filed a similar motion. That motion was denied because the hospital failed to supply medical records requested by plaintiffs. Defendant had received notice of both motions, and though in possession of interrogatory answers and documents provided by plaintiffs, he had yet to receive an affidavit of merit.[1] Nevertheless, he did not file a dismissal motion.

Instead, defendant continued with the discovery process. Between January 20, 2000 and February 15, 2001, the trial court entered a case management order; plaintiffs filed their expert's report detailing how defendant's conduct deviated from the standard of care and fell below acceptable medical standards; plaintiffs and defendant were deposed; the trial court heard argument concerning where Ms. Knorr was to submit to a physical examination by a defense expert; and a defense expert physically examined Ms. Knorr.

In accordance with the case management order, the 450–day discovery period was to be completed by October 16, 2000 and dispositive motions were to be filed no later than November 17, 2000. *See R.* 4:24–1(a). On January 26, 2001, the court granted a motion for summary judgment in favor of the hospital because no expert report had been filed demonstrating the hospital's liability.

---

[1] On January 6, 2000, plaintiffs' expert, Dr. Steven Becker, signed an affidavit of merit with regard to the claim against Dr. Smeal, but plaintiffs' attorney neglected to file it. By the time plaintiffs' attorney received Dr. Becker's affidavit, he had missed the statutory deadline by several weeks.

On March 2, 2001, more than fourteen months after plaintiffs' deadline for filing an affidavit of merit and more than four months after the deadline for filing dispositive motions, defendant moved to dismiss the complaint based on plaintiffs' failure to comply with the statute. The trial court granted defendant's motion and the Appellate Division affirmed.

On January 30, 2003, we granted plaintiffs' petition for certification, *Knorr v. Smeal*, 175 *N.J.* 431, 815 *A.*2d 478 (2003), on the limited issue of whether the doctrines of waiver, estoppel, or laches barred defendant's belated motion to dismiss the complaint because of plaintiffs' failure to file an affidavit of merit.

## II.

■ Our decision in *Ferreira* describes in some detail the mechanics and purpose of the Affidavit of Merit statute. The statute's essential goal is to put to rest unmeritorious and frivolous malpractice lawsuits at an early stage of litigation while allowing worthy claims to proceed through discovery and, if warranted, to trial. *Palanque v. Lambert–Woolley*, 168 *N.J.* 398, 404, 774 *A.*2d 501, 505 (2001). To that end, a plaintiff must file an affidavit of merit within 120 days of the filing of the answer or face dismissal of the complaint with prejudice, absent some equitable justification. *Tischler v. Watts*, 177 *N.J.* 243, 246, 827 *A.*2d 1036, 1038 (2003). The salutary benefit to both sides in eliminating a non-genuine malpractice claim early on is the conservation of resources. Plaintiffs and defendants should not be dragged through an expensive and burdensome discovery process that includes the taking of emotionally draining depositions if the plaintiffs cannot produce an expert to support their claims. As we discussed in *Ferreira*, we place a premium on prompt action by both plaintiffs and defendants. In this way, the resources and time of the parties will not be wasted by the continuation of unnecessary litigation. It is difficult to fathom that the Legislature, in enacting the Affidavit of Merit statute, contemplated that a defendant would run a plaintiff through the discovery process, learn that the complaint was supported by competent evidence and an expert's

report, and only then move to dismiss on the technical ground that the plaintiff failed to clothe the expert opinion in the form of an affidavit.

Defendant may have been entitled to a dismissal of the complaint had he acted within a reasonable time after the statutory deadline. The question that we confront, however, is whether granting defendant's motion so late in the litigation process—after defendant is in full possession of discovery and has verified the merit of plaintiffs' claims—would work an injustice and pervert the true purpose of the Affidavit of Merit statute. We consider whether plaintiffs are entitled to claim the protection of the equitable doctrines of waiver, estoppel, or laches.

### Waiver

Plaintiffs contend that defendant waived his right to enforcement of the statute by his inordinate delay in filing the dismissal motion. Waiver is the voluntary and intentional relinquishment of a known right. *W. Jersey Title & Guar. Co. v. Indus. Trust Co.*, 27 *N.J.* 144, 152, 141 *A.*2d 782, 786 (1958). An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights. *Id.* at 153, 141 *A.*2d at 787. The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference. *See Merchs. Indem. Corp. of N.Y. v. Eggleston*, 68 *N.J.Super.* 235, 254, 172 *A.*2d 206, 216 (App.Div.1961), *aff'd*, 37 *N.J.* 114, 179 *A.*2d 505 (1962). The party waiving a known right must do so clearly, unequivocally, and decisively. *Country Chevrolet, Inc. v. Township of N. Brunswick Planning Bd.*, 190 *N.J.Super.* 376, 380, 463 *A.*2d 960, 962 (App.Div.1983).

Defense counsel certainly was aware of his client's right to file a motion to dismiss the complaint because of plaintiffs' failure to comply with the statute. He knew that co-defendant, Dr. Lockwood, was granted a dismissal for that very reason. Inexplicably, defendant did not move to dismiss the complaint until after all discovery had been completed and more than a year after his

receipt of plaintiffs' expert's report detailing his negligence. Nevertheless, in deciding whether the doctrine of waiver applies, we note that the Affidavit of Merit statute places no obligation on a defendant to file a dismissal motion within a set timeframe. Not until our decision today in *Ferreira* have we intimated that a defendant would face an equitable bar on account of the dilatory filing of a motion to dismiss. We cannot find on this record that defendant intentionally elected to forgo his right to seek the remedy of dismissal by his tardy filing of the motion. Accordingly, we hold that the doctrine of waiver does not apply to the circumstances of this case.

## *Estoppel*

We next consider whether defendant is estopped from seeking relief under the statute because of his long delay in filing the motion and his active use of the discovery process on which plaintiffs relied to their detriment. "Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." *Casamasino v. City of Jersey City*, 158 *N.J.* 333, 354, 730 *A*.2d 287, 298 (1999). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. *Mattia v. Northern Ins. Co. of New York*, 35 *N.J.Super.* 503, 510, 114 *A*.2d 582, 585 (App.Div.1955). The doctrine is invoked in "the interests of justice, morality and common fairness." *Palatine I v. Planning Bd.*, 133 *N.J.* 546, 560, 628 *A*.2d 321, 328 (1993) (quoting *Gruber v. Mayor of Raritan Township*, 39 *N.J.* 1, 13, 186 *A*.2d 489, 495 (1962)). Estoppel, unlike waiver, requires the reliance of one party on another. *Country Chevrolet, supra*, 190 *N.J.Super.* at 380, 463 *A*.2d at 962. In short, to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment. *Miller v. Miller*, 97 *N.J.* 154, 163, 478 *A*.2d 351, 355 (1984).

Our courts have invoked the principles of equitable estoppel in cases comparable to the one at bar. In *Hernandez v. Stella*, 359

*N.J.Super.* 415, 416–19, 820 *A.*2d 102, 103–05 (App.Div.2003), an automobile negligence case, the plaintiff was required to file a physician's certification within "60 days following the date of the answer" to verify that his injuries met the verbal threshold of the New Jersey Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–8. The plaintiff did not file a timely physician's certification. Nevertheless, the defendants proceeded with discovery, exchanging answers to interrogatories and arbitrating the case pursuant to Rule 4:21A. Fourteen months after filing their answer, seven months after the statute of limitations had run on the plaintiff's claim, and three months following the arbitration, the defendants moved for summary judgment on the ground of the plaintiff's failure to provide the physician's certification. *Id.* at 417, 820 *A.*2d at 103–04.

The Appellate Division held that one of the "primary purposes" of AICRA was "to weed out frivolous claims at an early stage" and that the failure to raise that defense before arbitration was contrary to Rule 4:21A and the goals of AICRA. *Id.* at 419, 820 *A.*2d at 105. The court concluded that the defendants were equitably estopped because of the untimely filing of their motion. *Ibid; see also Konopka v. Foster,* 356 *N.J.Super.* 223, 812 *A.*2d 363 (App.Div.2002) (holding that plaintiff can raise equitable estoppel to bar dismissal for failure to provide physician's certification where defendant continued with discovery to completion and did not challenge timeliness of service until after statute of limitations had run); *cf. Zaccardi v. Becker,* 88 *N.J.* 245, 440 *A.*2d 1329 (1982) (refusing to apply statute of limitations to bar subsequent malpractice suit where defendant participated in discovery for seventeen months after plaintiff's initial suit had been dismissed for failure to answer interrogatories).

In this case, defendant did not act on plaintiffs' failure to file an affidavit until more than fourteen months after the filing deadline, despite knowing that his co-defendant, Dr. Lockwood, had filed a timely motion and was granted relief. Plaintiffs' attorney was under the false impression that his expert's affidavit of merit had

been forwarded to defendant on or about January 6, 2000, shortly after the statutory deadline had passed, but more than a year before defendant filed his motion to dismiss.[2] Defendant's failure to file a dismissal motion surely induced plaintiffs to believe that the case was on course. Certainly, plaintiffs would not have engaged in extensive discovery if they knew their cause of action was doomed due to their earlier failure to serve a timely affidavit. Plaintiffs, blissfully ignorant that their cause of action was mortally wounded, deposed defendant, submitted to depositions, served their expert's report on defendant, and filed a motion for a protective order. Ms. Knorr also submitted to a physical examination by the defendant's expert.

As a result of defendant's forbearance in filing the dismissal motion, plaintiffs incurred significant expert and deposition costs, as well as emotional stress under the mistaken belief that their cause of action was still viable. It makes no difference that defendant did not intend to mislead or cause plaintiffs to continue with discovery. *See Mattia, supra,* 35 *N.J.Super.* at 511, 114 *A.*2d at 586. Moreover, if defendant's motion were to be granted, then the attorneys labored needlessly and the judicial system expended its resources on a case that should not have been on the calendar had defendant acted timely. As noted, equitable estoppel is founded on fundamental principles of justice and fair dealing. The grant of defendant's motion to dismiss would work an injustice by ridding the system not of an unmeritorious claim, but a meritorious one. Accordingly, because of defendant's belated filing of the motion, and plaintiffs' reliance on his failure to do so timely, defendant is equitably estopped from gaining a dismissal.

## *Laches*

 Additionally, we hold that defendant's motion to dismiss is barred by the doctrine of laches. That doctrine is invoked

---

[2] At oral argument, plaintiffs' attorney stated that he had instructed his secretary to file the affidavit and that she had told him that she had done so. He, nevertheless, assigned the fault to himself.

to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party. *In re Kietur,* 332 *N.J.Super.* 18, 28, 752 *A.*2d 799, 805 (App.Div.2000) (citing *County of Morris v. Fauver,* 153 *N.J.* 80, 105, 707 *A.*2d 958, 970 (1998)). Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned. *Dorchester Manor v. Borough of New Milford,* 287 *N.J.Super.* 163, 172, 670 *A.*2d 600, 604 (Law Div.1994), *aff'd,* 287 *N.J.Super.* 114, 670 *A.*2d 576 (App.Div.1996). The time constraints for the application of laches "are not fixed but are characteristically flexible." *Lavin v. Bd. of Educ.,* 90 *N.J* 145, 151, 447 *A.*2d 516, 519 (1982). The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the "changing conditions of either or both parties during the delay." *Id.* at 152, 447 *A.*2d at 520. The core equitable concern in applying laches is whether a party has been harmed by the delay. *Id.* at 152–53, 447 *A.*2d at 519–20. As discussed earlier, in resolving this issue we find that defendant slept on his rights and that plaintiffs were harmed by the delay. Defendant offers no plausible justification for the unreasonable delay in filing his motion. Plaintiffs thought that they had filed the affidavit out of time, when in fact it had never been filed at all. Defendant, by his inexcusable delay, caused plaintiffs to believe to their detriment that he had abandoned the dismissal motion. Moreover, plaintiffs were harmed by the significant costs and emotional burden borne during fourteen months of discovery. By application of the doctrine of laches, defendant forfeited his right to pursue the motion.

## III.

The equitable remedies that we apply are consistent with and in furtherance of the Legislature's intent in enacting the Affidavit of

Merit statute. Defendant suggests that because the Legislature was silent in setting a timeframe for the filing of a motion to dismiss that there are no time limits. We disagree. The stated intent of the statute was to screen out meritless malpractice lawsuits at an early stage in the litigation. The affidavit of merit may have proved useful to defendant early in the case when he needed to know whether there was any validity to the complaint. With defendant's possession of full discovery and an expert's report establishing the merits of plaintiffs' action, an affidavit of merit would have added nothing to defendant's knowledge of the case. Therefore, defendant has no claim of prejudice. For that reason, the Legislature could not have intended to allow an otherwise meritorious claim to proceed indefinitely at great expense to both parties, only to have defendant obtain a dismissal on procedural grounds that should have been asserted much earlier in the process.

We hold that the doctrines of equitable estoppel and laches bar defendant's late motion to dismiss for failure of plaintiffs to file a timely affidavit of merit. Our decision in *Ferreira* requires that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions. That conference will allow the courts to head off potential discovery problems before they become the stuff of motions. At the case management conference, the defendant will be obliged to bring to the plaintiff's attention any deficiency in an affidavit of merit already served in order to give the plaintiff the opportunity to cure the defect within the 120–day period. In the event that the affidavit has not been served, the court will remind the parties of their respective obligations. We trust that early court intervention will make the circumstances of this case unlikely to recur.

We reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

Justice LONG, concurring in part and dissenting in part.

I concur in the result reached by the majority. Plainly, reinstatement of the complaint is warranted. However, I stand by the

opinion I expressed in *Ferreira v. Rancocas Orthopedic Assoc.*, 178 *N.J.* 144, 836 *A.*2d 779 (2003) (Long, J., concurring in part, dissenting in part), underscoring what I view as the shortcomings of the proposed accelerated case management methodology.

Justice ZAZZALI and Judge PRESSLER join in this opinion.

*For reversing and remanding*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and Judge PRESSLER (temporarily assigned)—7.

*Concurring and dissenting*—Justices LONG, ZAZZALI and Judge PRESSLER (temporarily assigned)—3.