**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3521-21

LORI J. MCENTEE,

     Plaintiff-Appellant,

v.

JOSEPH F. MCENTEE,

     Defendant-Respondent.

_____

Submitted May 13, 2024 – Decided May 21, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0297-15.

Smedley Law Group, attorneys for appellant (AllynMarie Smedley, on the briefs).

Michael Blaze Grasso, attorney for respondent.

PER CURIAM

     Plaintiff Lori McEntee appeals from a June 3, 2022 order recalculating defendant Joseph McEntee's child support obligation, denying her requests to

compel defendant to contribute to previously incurred college expenses, and for attorney's fees. We affirm in part, and reverse and remand in part, for the reasons expressed in this opinion.

The parties were divorced in 2016, and their final judgment of divorce incorporated a Marital Settlement Agreement (MSA). Pursuant to the MSA, they agreed defendant would pay $225 per week in child support for both of their sons. The children were eighteen and fourteen years old at the time of the divorce. The MSA contained a college education provision, which stated:

> The parties have agreed to attempt to resolve the issue of college contribution by and between themselves as the issue arises with each child. In the event they are unable to agree, they shall mediate the matter, sharing in the cost of same equally, prior to seeking a determination on the issue by the [c]ourt.
>
> The parties further acknowledged that at the time this agreement is executed, parents have an obligation to contribute to their children's college education pursuant to New Jersey case law and have taken that into mind when executing this agreement.

In May 2020, plaintiff filed an application to reinstate child support because the younger child had turned nineteen and child support automatically terminated by law. Her motion was unopposed. She noted the younger child was enrolled in college full-time. The court granted her application and reinstated child support in an order dated September 18, 2020. Notably,

although the final judgment of divorce and the MSA did not allocate child support, the September 2020 order stated: "Child support shall continue as previously ordered" and, in a separate section, it stated, "Defendant must pay child support for [the younger child] in the amount of $116 per week." Notwithstanding this language, probation continued to garnish defendant's paycheck at a rate of $225 per week and did not reduce child support to $116 per week.

On October 27, 2020, child support for the older child was terminated because he turned twenty-three years old. However, the October 2020 order reflected that child support would be $232 per week. The record reflects child support increased due to cost-of-living adjustments (COLA).

In November 2021, defendant moved to retroactively reduce his child support obligation for the younger child to match the $116 per week amount in the September 2020 order. He requested a $7,848 credit for the child support he overpaid.

Plaintiff filed a cross-motion and opposition. She asked the court to dismiss defendant's motion in its entirety because he did not provide his last-filed case information statement (CIS), or a current CIS. Her cross-motion requested the court find defendant in violation of the October 2020 order,

3

because he had underpaid support by continuing to pay $225 per week rather than the $232 required by the October order and was therefore $385 in arrears. In the alternative, plaintiff argued if there was an overpayment, the court should offset it against money defendant owed her. She also requested the court find defendant had an obligation to contribute to the older child's past college expenses and the younger child's ongoing college expenses. Specifically, she asked the court to require defendant to pay twenty-five percent of the college expenses for both children.

Plaintiff argued there was a change in circumstances warranting modification of child support because both parties were earning more, the children's expenses and health insurance costs had increased, and defendant did not exercise his overnight parenting time. She requested the court order the parties to exchange updated CISs and complete financial documentation to recalculate support.

As to the college expenses, plaintiff claimed "[d]efendant was in the loop on [the college] visits, options, and applications." She asserted the parties "had discussions about payment arrangements, which made mediation seem unnecessary." According to plaintiff, defendant "acknowledged the process, . . . [and] visit[ed] a school or two, [but] did not offer much constructive input." She

4

claimed the parties "discussed with [their] sons about sharing the financial responsibility, specifically that they would be responsible for [fifty percent] of the costs and [she and defendant] . . . would pay for the rest between [themselves]." Further, "[d]efendant verbally agreed that he would split the monthly interest payments on [their sons'] loans . . . with [her,] but he has never done so."

Plaintiff also requested defendant pay her counsel fees and costs. She argued defendant never made her aware he had any concerns regarding child support, and his motion filing was incomplete and attached no proofs to support his claims. She claimed defendant operated in bad faith by reneging on their agreement and leaving her little time to file a motion to seek the court's intervention regarding the children's expenses.

In March 2022, the motion judge conducted a status conference with the parties' attorneys. He acknowledged defendant is "seeking a change in child support based on [the September 18 order] and the emancipation of the older child," and stated he would "grant the recalculation subject to . . . [the calculation of] new guidelines." The judge ordered the parties to exchange new CISs and child support guidelines and scheduled the next hearing for April 7, 2022.

Approximately a week before the hearing, plaintiff filed her updated CIS and proofs regarding college expenses incurred and paid. On April 5, 2022, her attorney alerted the motion judge to the fact defendant still had not submitted an updated CIS, and that counsel was unable to prepare the revised guidelines using his information and instead calculated the guidelines based on publicly available salary information for defendant. Counsel reiterated this was grounds for an award of counsel fees. Later that day, defendant's attorney emailed his client's proof of contributions to the children's college expenses along with his paystubs for 2021 and 2022, and W-2s for 2019-21 to plaintiff's counsel. Defendant did not supply a CIS. The April 7, 2022 hearing was adjourned.

On April 28, 2022, defendant submitted an updated CIS. Thereafter, plaintiff's attorney re-submitted the revised child support guidelines requested by the court. In her letter accompanying the submission, counsel pointed out defendant's CIS was deficient because it: did not include his year-to-date income; the schedule C personal expenses were incomplete and his total schedule A, B, and C expenses depicted a far greater income than he reported; listed a mortgage but no real property in the asset section, a car with an auto loan, but no loan listed in the liability section, no retirement assets, the short-term liabilities listed were illegible; and failed to include defendant's 2021 tax

6

returns. Plaintiff also claimed defendant did not provide objective proof of his contribution to the college expenses.

Plaintiff calculated the child support guidelines applying the 14.6% teenage adjustment because the initial support award was entered when both children were over the age of twelve. The guidelines yielded a weekly support figure of $296. Plaintiff reiterated her claim for counsel fees because defendant had not provided his income information and forced her attorney to reconstruct his income to provide guidelines to the court, only to have to calculate the guidelines again when he did provide the information.

Following several adjournments for reasons unrelated to the issues raised in this appeal, the motion judge heard the matter on June 3, 2022. At the hearing, defendant reiterated the court should set child support at $116 per week and credit him for the overpayment. Alternatively, he argued child support should be set at $248 per week. The only difference between the guideline calculations proffered by defendant was that plaintiff's calculation included a 14.6% adjustment to account for the younger child's age. Defendant's attorney stated he did not include the adjustment because he was unsure whether the original order was made after the younger child "reach[ed] . . . the age that the adjustment would apply."

7

Plaintiff argued defendant was not owed a credit because the September 2020 order expressly continued child support "as previously ordered," defendant never appealed from that order or sought a recalculation, and there was never a finding to support the $116 weekly figure. She reiterated defendant should pay child support at the rate of $296 per week. Plaintiff alleged the parties had an agreement to equally split their one-half share of the college expenses. She renewed her request for counsel fees and asserted defendant lacked credibility on the reimbursement issue because he provided no objective evidence to support his accounting.

The judge rejected defendant's argument that child support was $116 per week and found the amount mentioned in the September 18 order was "an incorrect interpretation" of the final judgment. He ordered probation to credit defendant's "account with the amount of $109[] per week for a total of $7,848." He found a change in circumstances warranting a modification of child support, and then ordered support payable "at $248[] per week as of October 27[], 2020" and directed probation to adjust its records accordingly.

The judge denied plaintiff's request for attorney's fees because he found defendant was not "acting in bad faith" or "trying to delay." He found defendant had no obligation to contribute to the older child's past college expenses because

8

plaintiff "incurred [those] expenses (with the children) without the input of [d]efendant," and she waived a contribution to those expenses because she "had an obligation to submit those expenses to mediation."

The judge ordered the parties to mediate their dispute regarding the ongoing college expenses for the younger child. He also granted plaintiff's request that both parties provide updated CISs "to facilitate calculation of child support and college contribution."

## I.

Generally, our standard of review in Family Part matters "is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence" in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

When it comes to child support, "[t]he trial court has substantial discretion in making a[n] . . . award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001). "If consistent with the law, such an award 'will not be disturbed unless it is "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."'" Id. at 315-16 (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)). We likewise review

9

counsel fee determinations for an abuse of discretion.  <u>Barr v. Barr</u>, 418 N.J. Super. 18, 46 (App. Div. 2011).

II.

Plaintiff argues the judge made no findings of fact or conclusions of law regarding why he adopted defendant's child support guideline calculation of $248 per week over plaintiff's calculation of $296 per week.  She alleges the judge erred by not applying the 14.6% upward adjustment because the guidelines prepared at the time of the divorce showed the children were over the age of twelve when the initial child support order was established.  Plaintiff asserts this was a mistake of law, which is not entitled to our deference.

According to the Rules of Court, the "guidelines must be used as a rebuttable presumption to establish and modify all child support orders.  The guidelines must be applied in all actions, contested and uncontested, in which child support is being determined including . . . non-dissolution" matters. Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, ¶ 2, www.gannlaw.com (2024).  "[A]n award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case."  <u>Ibid.</u>  <u>See also</u> <u>Lozner v. Lozner</u>, 388 N.J.

Super. 471, 482 (App. Div. 2006) ("The guidelines should not be altered unless [the party opposing them] has rebutted the presumption [the guidelines apply].").

A court may deviate from, adjust, or disregard the guidelines. Child Support Guidelines, Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶¶ 2, 3, 21. However, its reasons for doing so "must be specified in writing on the guidelines worksheet or in the support order. Such findings clarify the basis for the support order if appealed or modified in the future." Id. at ¶ 3.

"The child support schedules are based on child-rearing expenditures averaged across the entire age range of zero through [seventeen] years . . . ." Id. at ¶ 17. "However, initial awards for children in their teens are underestimated by the averaging and should be adjusted upward to compensate for this effect." Ibid. (emphasis omitted). "[T]he cost of children aged [twelve] through [seventeen] was 14.6% above the average expenditures. Therefore, if the initial child support order is entered when a child is [twelve] years of age or older, that order and all subsequent orders shall be adjusted upward by 14.6%." Ibid.

Here, both children were older than twelve when the final judgment was entered, and child support became payable. Therefore, the 14.6% adjustment applied to the initial award and all subsequent awards, absent a reason to deviate,

11

adjust, or disregard this provision of the guidelines. The motion judge articulated no reasons for excluding the 14.6% adjustment despite the fact both parties agreed it was applicable. For these reasons, we are constrained to reverse and remand the child support determination and direct the judge to enter the child support amount set forth in the guidelines provided to him by plaintiff, at $296 per week retroactive to October 27, 2020.

III.

Plaintiff reiterates the claim defendant's CIS was deficient because it did not include his most recent tax returns as required by Rule 5:5-2 and argues the returns were necessary because they would reveal if defendant had any income other than from his employment. She also repeats her arguments regarding the CIS's inconsistency and incompleteness. She asserts the motion judge made no findings regarding these claims.

Plaintiff argues the motion judge erred by compelling mediation of the college contribution issue because the parties admitted they had a pre-existing agreement regarding their contributions to the children's college expenses. She notes oral agreements are enforceable, and the fact she and the younger child partially performed under the agreement shows one existed. Moreover, the judge indicated he would adjudicate the contribution issue, leading the parties

to incur the costs of submitting their proofs, but then ordered them to mediate the dispute, rather than compel defendant's contribution. Plaintiff argues the judge misinterpreted the MSA's mediation provision because it only contemplates mediation when issues arise regarding the college contribution and here there was no issue because the judge found there was evidence of an agreement to share the children's college costs and student loan interest. She asserts the court should have held a plenary hearing to adjudicate each party's obligation.

Plaintiff argues the motion judge also erred when he concluded she incurred the past college expenses without defendant's input. She asserts the record did not support this conclusion because defendant never claimed he was not consulted, and the judge neither inquired about nor held a plenary hearing on this issue before reaching this conclusion.

A parent's obligation to contribute to college is akin to child support and the Family Part is duty bound to assure children are fully supported by both parents. See Jacoby v. Jacoby, 427 N.J. Super. 109, 121 (App. Div. 2012). Another important principle is that a marital settlement agreement is a contract that is enforceable to the extent it is fair and equitable. Petersen v. Petersen, 85 N.J. 638, 642 (1981) (citations omitted).

13

"The intent to waive [a contractual right] need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Knorr v. Smeal, 178 N.J. 169, 177 (2003). Waiver may be "found if the conduct of [an entity] after information of . . . breach of contract is such as to justify an inference of affirmation rather than rescission of the contract.'" Iafelice ex rel. Wright v. Arpino, 319 N.J. Super. 581, 588 (App. Div. 1999) (quoting Bonnet v. Stewart, 68 N.J. 287, 294 (1975)).

Laches is "the failure to assert a right within a reasonable time resulting in prejudice to the opposing side." Clark v. Clarke ex rel. Costine, 359 N.J. Super. 562, 570 (App. Div. 2003). See also L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002). The key factors are the length of delay, reasons for delay, and change of position by either party during the delay. Ibid.

At the March 4 hearing, the motion judge acknowledged the parties had an agreement about sharing college expenses because he said plaintiff seemed to have "sat on" her rights when pursuing contribution to past college expenses. He further stated: "I understand there's an agreement for the splits and things like that. My concern is that if these bills are in dispute, they should be subject to mediation." And he stated: "[W]e don't have bills being sent, we've got a

mediation clause in the [MSA]. Nonetheless[,] we're here, the bills exist, and we're going to resolve this as well."

We part ways with the judge's finding the past college expenses were not compensable due to laches or waiver. The record does not clearly show plaintiff abandoned her claim to defendant's contribution to the college expense or that she was indifferent to enforcing his obligation. Moreover, there was no lengthy delay or concomitant prejudice to defendant because of plaintiff's alleged inaction. For these reasons, the past college expenses shall be submitted to mediation.

We reject plaintiff's challenge to the decision to submit the ongoing college expense dispute to mediation. While the record may lend some support to an agreement for each party to contribute twenty-five percent to the college obligation, the duration of the obligation and the nature of the payment (i.e., whether it is toward tuition, student loan interest, or both) is unclear. So is the parties' respective accounting of the college expenses paid, whether plaintiff acted without consulting defendant, and the amount of reimbursement or offset sought by each of them. Moreover, the parties contested whether defendant provided full financial disclosure due to the problems plaintiff pointed out with his CIS. For these reasons, the college expense issue was not a straightforward

15

enforcement issue for the motion judge, but instead fell within scope of the MSA's mediation provision. Therefore, the judge did not err by referring the ongoing college expense dispute to mediation.

Integral to the parties' success in mediation is the mutual exchange of completed CISs and documentation relating to the college expense issue, which the judge ordered. However, we decline to reach plaintiff's claims on appeal challenging the judge's refusal to make findings regarding the completeness of defendant's CIS and financial disclosure, because this shall abide any discovery orders entered by the judge in the event mediation fails and the matter must be tried. Suffice to say that absent an order enforcing discovery prior to the plenary hearing on this subject, the judge is always free to consider a party's failure to comply with discovery or provide a complete CIS in weighing credibility and adjudicating the merits.

Therefore, the past and ongoing college expenses shall be mediated by the parties. If the matter does not resolve, the motion judge shall conduct a plenary hearing to determine whether the parties had an agreement regarding payment of the college expenses. If the judge finds there was an agreement, he shall then determine whether and how it shall be enforced. If the judge finds there was no

A-3521-21

agreement, he shall determine each party's contribution obligation to the past and ongoing college expenses.

IV.

Finally, plaintiff reiterates she should have been awarded counsel fees because of defendant's failure to file a complete CIS and provide the court ordered information in a timely fashion to run new guidelines. She points out the judge did not assess the Rule 5:3-5(c) or R.P.C. 1.5 factors before denying the request for fees.

We are constrained to reverse the counsel fee determination because the judge did not address all the Rule 5:3-5(c) factors. The thrust of plaintiff's argument for counsel fees is that she had to incur counsel fees to run the guidelines because defendant was not forthcoming in filing a complete CIS or providing complete financial disclosure. These claims were separate from the exchange of CISs and financial documentation the judge ordered in contemplation of mediation of the college expense issue, and in the event of a failed mediation, what document exchange the judge may order in preparation for trial. For these reasons, we remand the counsel fee issue as solely relates to the child support calculation to the motion judge to adjudicate and apply all the Rule 5:3-5(c) factors.

A-3521-21

Affirmed in part, and reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                          A-3521-21